Filed 9/23/08 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2008 ND 173

Larry Buchholz, as Trustee of the 

Buchholz Mineral Trust, 

Neal Buchholz and Doris Buchholz, Plaintiffs and Appellees

v.

Burlington Resources Oil and 

Gas Company LP, Defendant and Appellant

No. 200800 26 

Uttke Family Limited Partnership, Plaintiff and Appellee

v.

Burlington Resources Oil and 

Gas Company LP, Defendant and Appellant

No. 20080027

Appeal from the District Court of Bowman County, Southwest Judicial District, the Honorable Allan L. Schmalenberger, Judge.

AFFIRMED.

Opinion of the Court by Sandstrom, Justice.

Albert J. Hardy, Hardy, Maus & Nordsven, P.C., P.O. Box 570, Dickinson, N.D. 58602-0570, for plaintiffs and appellees.

 John W. Morrison, Jr. (argued) and Wade C. Mann (appeared), Fleck, Mather & Strutz, P.O. Box 2798, Bismarck, N.D. 58502-2798, for defendant and appellant.

Buchholz v. Burlington Resources

Nos. 20080026 & 20080027

Sandstrom, Justice.

[¶1] Burlington Resources Oil and Gas Company LP (“Burlington”) appeals from a district court judgment awarding damages to Larry Buchholz, as trustee of the Buchholz Mineral Trust, Neal Buchholz, Doris Buchholz, and the Uttke Family Limited Partnership for breach of salt water disposal agreements.  We affirm, concluding the district court did not err in determining that the salt water disposal agreements between the parties were not modified or amended by a unitization order of the North Dakota Industrial Commission.

I

[¶2] These two consolidated actions involve salt water disposal agreements entered into by the owners of interests in certain tracts of land in Bowman County and Meridian Oil, Inc. (“Meridian”), which was the predecessor to Burlington.

[¶3] Neal and Dorothy Buchholz are the surface owners of land in Bowman County.  In 1981, Davis Oil Company drilled a well on the land.  The well was plugged and abandoned in 1982, and ownership of the well bore reverted to the Buchholzes.  In 1995, Meridian and the Buchholzes entered into agreements allowing Meridian to build a salt water pipeline on the Buchholzes’ property and dispose of waste salt water in the abandoned well bore on the property. Meridian agreed to pay five cents per barrel to the Buchholz Mineral Trust for all waste salt water disposed in the well.

[¶4] The Uttke Family Limited Partnership owns the surface estate of certain lands in Bowman County.  Burlington has the leasehold interest in oil and gas on the property.  Burlington drilled a well on the property that produced for a period of time, and the well was subsequently plugged and abandoned.  In April 1996, Meridian and the Uttke Family Limited Partnership’s predecessor in interest, the Uttke Revocable Trust, entered into a salt water disposal agreement.  Under the terms of the agreement, Meridian was granted the right to convert the abandoned well on the Uttke property to a salt water disposal well and was required to pay five cents per barrel for salt water disposed of in the well.  In April 2001, the parties renegotiated the agreement, with Meridian required to pay the five-cent per barrel fee to the Uttke Family Limited Partnership.

[¶5] Burlington eventually succeeded to Meridian’s rights under the agreements.  Burlington for years used the Buchholz and Uttke wells to dispose of waste salt water and paid the five-cent per barrel fees to the respective landowners.

[¶6] Effective April 2001, the Industrial Commission created the Cedar Hills South-Red River “B” Unit (“the Unit”).  The Buchholz and Uttke wells lie within the boundaries of the Unit, and Burlington is the operator of the Unit.

[¶7] For more than two years after formation of the Unit, Burlington continued disposing of waste salt water in the Buchholz and Uttke wells and paid the five-cent per barrel salt water disposal fees under the agreements.  On October 30, 2003, Burlington sent a letter to Larry Buchholz, trustee of the Buchholz Mineral Trust, advising him that Burlington believed the creation of the Unit had nullified or modified the parties’ agreement and relieved Burlington of its obligation to pay the fee to dispose of salt water in the Buchholz well.  Burlington offered to continue paying the salt water disposal fee through December 2003 if Buchholz would agree in writing that the disposal fee had been eliminated and Burlington could in the future use the disposal well without paying the fee.  Larry Buchholz did not accept Burlington’s proposal.  On December 17, 2003, Burlington sent a similar letter to Victor and Ethelyn Uttke, offering to pay the disposal fee through February 2004 if the Uttkes would acknowledge elimination of the disposal fee and Burlington’s right to use the disposal well without paying the fee.  The Uttkes did not accept the proposal.  Burlington has continued to dispose of salt water in the Buchholz and Uttke wells but has discontinued paying the five-cent per barrel disposal fee.

[¶8] The Buchholzes and the Uttke Family Limited Partnership brought separate actions against Burlington, alleging breach of contract and seeking an accounting of the number of barrels of salt water that Burlington had disposed in the wells without payment.  The cases were consolidated for trial.  The district court concluded that the parties’ salt water disposal agreements had not been modified or amended by unitization and ordered an accounting.  The accounting showed that the Buchholzes were owed $210,350.20 for salt water disposed in their well between August 2003 and August 2007, and the Uttke Family Limited Partnership was owed $171,943.95 for salt water disposed in its well between September 2003 and August 2007.  Judgment was entered awarding damages to the Buchholzes and the Uttke Family Limited Partnership, and Burlington appealed.

[¶9] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27-05-06.  Burlington’s appeal was timely under N.D.R.App.P. 4(a).  This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 28-27-01.  

II

[¶10] Burlington has raised a single issue on appeal:

Whether the district court erred in concluding that creation of the Cedar Hills South Red River “B” Unit did not supersede the salt water disposal agreements between Burlington Resources Oil and Gas Company LP and the Buchholz Mineral Trust, Neal Buchholz, Doris Buchholz, and the Uttke Family Limited Partnership. 

[¶11] Burlington’s argument is premised primarily upon Paragraphs 12 and 13 of the Industrial Commission’s order creating the Unit, which state:

(12) The injection of air and/or other substances in the Cedar Hills North-Red River “B” Unit and the injection of water and/or other substances into the Cedar Hills South-Red River “B” Unit by the unit operator for the purpose of operating an enhanced recovery project is authorized.

(13) The unit operator may, from time to time, use certain existing wells, or wells to be drilled, for the purpose of injecting substances into each respective unit area upon approval by the Commission.  The application for such approval shall be in accordance with statutes and rules of the Commission. 

[¶12] Burlington contends provisions in the Unit Operating Agreement and North Dakota statutory law require that Paragraphs 12 and 13 of the Industrial Commission’s order modify, amend, and supersede any preexisting contractual agreements between the parties.  Section 38-08-09.8, N.D.C.C., provides in part:

Property rights, leases, contracts, and all other rights and obligations must be regarded as amended and modified to the extent necessary to conform to the provisions and requirements of sections 38-08-09.1 through 38-08-09.16 and to any valid and applicable plan of unitization or order of the commission made and adopted pursuant hereto, but otherwise to remain in full force and effect.

Similarly, Paragraph 18 of the Unit Operating Agreement provides in part:

18.  Lease and Contracts Conformed and Extended.  The terms, conditions, and provisions of all leases, subleases, and other contracts relating to exploration, drilling, development, or operation for oil or gas on lands committed to this Agreement are hereby expressly modified and amended to the extent necessary to make the same conform to the provisions hereof, but otherwise to remain in full force and effect . . . .

[¶13] In accordance with the statute and the Unit Operating Agreement, prior contracts between the parties will remain in full force and effect unless amendment or modification is necessary to conform to the Commission’s order, the Unit Operating Agreement, or express statutory provisions.  Burlington argues that Paragraph 12 of the Industrial Commission’s order authorizes Burlington to use the Buchholz and Uttke salt water disposal wells without paying a fee, and supersedes the salt water disposal agreements.  Burlington has misconstrued the authority granted by the Industrial Commission’s order.  

[¶14] Paragraph 12 provides that Burlington may inject water into the south portion of the unit “for the purpose of operating an enhanced recovery project.”  “Enhanced recovery” is a term of art, and is defined in Howard R. Williams and Charles J. Meyers, 
Manual of Oil and Gas Terms
 391 (8th ed. 1991):

“[T]he increased recovery from a pool achieved by artificial means or by the application of energy extrinsic to the pool, which artificial means or application includes pressuring, cycling, pressure maintenance or injection to the pool of a substance or form of energy but does not include the injection in a well of a substance or form of energy for the sole purpose of (i) aiding in the lifting of fluids in the well, or (ii) stimulation of the reservoir at or near the well by mechanical, chemical, thermal or explosive means.”

“Enhanced recovery project” is defined as:

A pool or part thereof in which operations in accordance with a scheme for ENHANCED RECOVERY 
(q.v.
) of oil are conducted or, where the scheme provides for the application of more than one recovery mechanism, the part of the area subject to the scheme which is subject to one such recovery mechanism.

Id.
 at 392.

[¶15] The form of enhanced recovery relevant in this case under Paragraph 12 of the Industrial Commission’s order is fluid injection, which is defined as:

Injection under pressure through an input well of a fluid (liquid or gaseous) into a producing formation as part of a secondary recovery or pressure maintenance operation; a method of recovery of hydrocarbons in which part of the energy employed to move the hydrocarbons through a reservoir is applied from extraneous sources by the injection of liquids or gases into the reservoir.

Id.
 at 469.  Professors Williams and Meyers explain the difference between secondary recovery and pressure maintenance:

Typically a differentiation is made between secondary recovery and pressure maintenance; the former involves an application of fluid injection when a reservoir is approaching or has reached the exhaustion of natural energy, while the latter involves an application of fluid injection early in the productive life of a reservoir when there has been little or no loss of natural reservoir energy.  The fluid (water, gas or air) is injected into the formation through an input well and oil is removed from surrounding wells.

Id.
 at 1124. 

[¶16] Paragraph 12 of the Industrial Commission’s order authorizes the unit operator  to inject water into the Unit only “for the purpose of operating an enhanced recovery project.”  That authority is clearly limited to injecting water to increase recovery in the Unit through secondary recovery or pressure maintenance.  It does not authorize the unit operator to dispose of waste salt water into a different formation through an existing salt water disposal well.

[¶17] Burlington also attempts to rely upon Paragraph 13 of the Industrial Commission’s order, which authorizes the unit operator to use existing wells, or wells to be drilled, for the purpose of injecting substances into each respective unit area.  That provision expressly requires prior approval by the Industrial Commission.  Burlington did not, in its brief on appeal, draw our attention to evidence in the record demonstrating that the Industrial Commission had given approval under Paragraph 13 for use of the Buchholz or Uttke wells to dispose of Unit waste salt water.  When questioned at oral argument whether the Industrial Commission had expressly approved such use of the Buchholz and Uttke wells under Paragraph 13, Burlington’s counsel indicated that Plaintiff’s Exhibit 10 showed approval had been sought and obtained.  Plaintiff’s Exhibit 10 is entitled “Water Source Wells - Underground Injection Control Permit Application” and appears to be a listing of wells that would be the source of water to be injected into the Uttke well.  It is not dated and does not show that the application was approved by the Industrial Commission.  When Plaintiff’s Exhibit 10 was introduced at trial, no witness identified it or explained its relevance.  Rather, counsel stated that the document was an attachment to Burlington’s application to convert the Uttke well to a salt water disposal well, which presumably would have occurred at the time of the original salt water disposal agreement between Uttke and Meridian in 1996.  This predates the Industrial Commission’s 2001 order creating the Unit.  In addition, Plaintiff’s Exhibit 10 does not address the Buchholz salt water disposal well.  Thus, there is no evidence in this record that the Industrial Commission approved Burlington’s disposal of Unit waste salt water into the Buchholz or Uttke wells under the provisions of Paragraph 13 of the Industrial Commission’s order.

[¶18] Burlington also argues that, as the unit operator, it has a general right to use the surface of the land within the Unit, including the right to use existing wells within the Unit to dispose of waste salt water.  
Cf.
 
Feland v. Placid Oil Co.
, 171 N.W.2d 829, 834-35 (N.D. 1969) (operator, as lessee, had the right to construct a salt water disposal pit if its use of the land was reasonable for the purpose of extracting oil and gas).  We first note that any general right to inject waste salt water into existing wells would appear to be subject to Paragraph 13 of the Industrial Commission’s order, which expressly requires the Industrial Commission’s prior approval before injecting substances into these wells.  Furthermore, even if Burlington has a general right to use the surface to dispose of waste salt water, or if the Industrial Commission gave its approval to disposal of salt water in the Buchholz and Uttke wells, the parties’ prior agreements would be amended or modified only if it were found to be necessary to conform to the Industrial Commission’s order.  

[¶19] Under N.D.C.C. § 38-08-09.8 and Paragraph 18 of the Unit Operating Agreement, existing contracts are to be regarded as amended or modified only to the extent necessary to conform to the applicable statutory provisions, the Industrial Commission’s order, or the Unit Operating Agreement.  In all other respects, preexisting contracts “remain in full force and effect.”  N.D.C.C. § 38-08-09.8.  As explained in 1 Bruce M. Kramer & Patrick H. Martin, 
The Law of Pooling and Unitization
 § 13.08 (3d ed. 2007) (footnote omitted), agreements of the parties should be upheld and enforced unless modification is clearly necessary to the operation of the Unit:

§ 13.08 Relationship of Unit Orders and Contracts Among Parties

One of the particularly difficult areas of conservation practice is the relationship between administrative orders and contracts that relate to the same matters.  The contract may have been in existence when the order was entered, or the contract may have been agreed to after the issuance of the order.  In the former, the question is raised as to the extent to which an order can modify a contract, and in the latter the question is the extent to which parties subject to an order can modify (or implement) the rights and duties vis-a-vis one another under that order. While these are distinct questions, the guiding principle in answering both is similar.  That is, there is a preference for freedom of contract.  A spacing, pooling, or other conservation order should extend only so far as necessary to prevent waste and protect correlative rights.  When parties contract for an effect other than the effect provided for by the agency’s order, they are free to do so, so long as it does not lead to waste or denial of the correlative rights of others in the common source of supply.

[¶20] Accordingly, prior contracts are amended or modified by the order creating the unit only when there is an actual conflict between their provisions and modification is necessary to prevent waste or the denial of correlative rights.  In this case the parties had contracted for use of the existing wells on the Buchholz and Uttke property to dispose of waste salt water, with Burlington to pay an agreed-upon fee for each barrel of salt water disposed of in the respective wells.  The agreements do not prohibit Burlington from using the Buchholz and Uttke wells to dispose of waste salt water; rather, the agreements merely provide that if Burlington uses the disposal wells, it must pay a fee.  These agreements do not conflict with the provisions of the Industrial Commission’s order or with the terms of the Unit Operating Agreement, and modification is not necessary to operation of the Unit.  Thus, the district court did not err in concluding that the salt water disposal agreements were not modified or amended by the Industrial Commission’s order creating the Unit.

III

[¶21] We have considered the remaining issues and arguments raised by the parties and find them to be either unnecessary to our decision or without merit.  The judgment is affirmed.

[¶22] Dale V. Sandstrom

Daniel J. Crothers

Mary Muehlen Maring

Carol Ronning Kapsner

Gerald W. VandeWalle, C.J.